All right. Our final case this morning is number 19-14664, Safeco Insurance Company versus Endurance American Specialty Insurance Company. And Mr. Rosen, we will start with you. Thank you, Your Honor. Good morning. May it please the Court, Jonathan Rosen on behalf of Appellant Safeco. This is an appeal that presents a dispositive issue of pure law. That is, whether Safeco owed a duty to indemnify Comagee's Endurance is insured for a third-party claim brought against Comagee's, alleging that Comagee's failed to procure adequate and appropriate insurance for its customer, its client, Mr. Smith. Mr. Rosen, can I ask you one question and then I'll let you get on to the rest of your argument? Sure. Are your first three contentions on appeal essentially the same one? In other words, that the agreement, I mean, you phrase them differently. But do those first three arguments all come down to the claim that the agreement did not require Safeco to indemnify Comagee's under these circumstances?  In other words, it's three different really ways to reason out that the plain language of the indemnity agreement does not require Safeco to indemnify for a claim alleging Comagee's own negligence or own wrongful conduct. Okay, go ahead. And so what I was going to say is the answer to the to the dispositive issue, the issue of pure law, turns on to undisputed critical facts. And the first critical fact is the nature of the claim asserted against Comagee's. Endurance argues it's the master of its own claims, but endurance is not the master of the third party claim that it paid to settle that was brought against Comagee's. You can't seek third party indemnity and completely ignore the substance or the allegations of the third party claim for which you seek indemnity. Tell me, tell me, tell me briefly how you would describe under Florida law, first party indemnity and third party indemnity and how they differ. Sure. Well, third party indemnity, I think, is the most common. And it's the clearest and easiest to understand. It's indemnification for a claim brought by a third party, a non party to the agreement. And that's precisely what we have here. I don't think there's any dispute that endurance, endurance's claim is for third party indemnity. The confusion comes because endurance completely ignores the substance of the third party claim and wants to focus entirely on alleged acts and omissions by safe go that led to the third party claim being brought. First party indemnity is harm caused directly by the other party to the agreement. You don't have a third party claim such as a lawsuit that triggers the duty to indemnify. Here, the plain language of the indemnity agreement calls only for third party indemnification. It's conditioned upon notice of a third party claim. And again, I don't think there's any real dispute that the issue for the court is one of third party indemnity. The confusion really comes from endurance's position in a lawsuit, which ignores the substance of the third party claim and focuses entirely on, you know, a settlement agreement and an assignment of that claim that then led to that claim being made. But the claim itself does not implicate safe goes acts and omissions. The claim is that comedies didn't communicate effectively with with this insured fail to inquire about the availability of what the insured Mr. Smith assets were and didn't procure appropriate insurance for the insured. That's a negligence claim to breach of fiduciary duty claim. It doesn't implicate safe go at all. There's no even inference that safe had anything to do with those particular allegations that led to Mr. Smith being underinsured grossly underinsured. So can I ask you, this is Judge Newsome. Can I ask you a quick question? I'm hardly an insurance law expert. So I'm sort of learning on the fly here. But so do I understand in your position to be sort of twofold? One, that to the extent that that that that the claim sort of preexisted the alleged misconduct of safe go that it doesn't fit within the indemnity agreement between you and endurance. Or rather, rather you and comedies because you don't indemnify against comedies own misconduct. And secondly, that to the extent that the claim instead is that safe go sort of was in cahoots and serve to sort of like the sort of drum up this claim. Then it is, in effect, a first party indemnity claim for which the contract doesn't provide in a different contract would have to specify is that do I have that basically right? I think that I think that is basically correct, Your Honor. And it's not even necessarily the the chronology of the claim over that is an interesting point. I think that we didn't really address it in our in our brief that the claim against comedies predates any of the alleged conduct by safe go. But under all of the Florida cases determining whether or not there's a duty to indemnify the courts look at the allegations of the claim doesn't matter whether it's meritorious. And one of the the key components to endurance his claim is that the the claim against comedies was trumped up. It was it was a bogus claim. You can pick your adjective or your colorful language, but that doesn't matter on the floor. It matters what the character of the substance, the nature of the claims and the claim against comedies is for comedies own conduct. And the reason the first party indemnity issue is even an issue is because endurance chooses to ignore that claim and wants to focus entirely on this settlement agreement and this assignment of the claim and the arbitration of damages. And really, all safe code did was give the green light for it's insured to proceed with the settlement agreement that would protect and so insured from an excess judgment. And that has nothing to do with the claim itself that was inserted against comedies. Does that answer your question. Yeah, that's helpful. And just one follow up to what to have what relevance is the fact that the that the broad claims here were rejected or the broad claim sort of part and parcel with this sort of like this scheme or this plan that safe code is alleged to have hatched to sort of drum up this claim. And if so, how did, how does the rejection of the broad claims kind of play in. That's a good question, Your Honor, I think there's certainly is overlap between the conduct that endurance contend supports its breach of contract claim, and the conduct that supports the court claims that jury found safer was not viable. In fact, it's, it is the same conduct. And I think that the only conceivable claim that endurance might have for safe goes participation in the settlement agreement and consent to the settlement agreement going forward would be some kind of court claim we don't think it's a meritorious claim. We think the jury found. But the contract claims is clearly not supported by by the two most basic undisputed fact which is the claim that was asserted against allergies and the plain language of the indebted provision you don't have to go any further to see this this claim should never been submitted to the jury. The only ambiguity that endurance identifies is not a material ambiguity because you know they talked about whether or not the indemnity provision provides support for claims that are either limited to the placement of business or go beyond that even if you can screw it more broadly under the long line of Florida cases there's clearly no unequivocal intent to identify the indemnity comedies for its own wrongful acts. So, and the other the other point I want to make is that endurance presented no competent evidence of the party's intent, even if you assume even if you buy their arguments that there is some material ambiguity here. The only party who testified was Linda percent of President of allergies. She testified a she didn't know the indemnity provision meant. She also testified that the first time she ever read the agreement was after the claim in May, and that's irrelevant to the party's intent at contract formation that's the critical period. Obviously once there's a claim that's been made the party's testimony about the meaning of the contract conveniently gets tailored to the party's litigation position. So, there is no evidence to support or resolve the very ambiguity that endurance identify that that's another critical point and I mean the, the list of Florida cases. One other argument they make is that the, the indemnity provision has a rising out of language, broad language on the tourist case that should be construed to encompass this kind of pilot by safe go. And the problem with that is, I think at least five of the cases we cite in our brief including the two floors people cases, the indemnity provisions have a rising out of language and arising out of is not is still it's broad language but it's general and it's not language that supports an unequivocal duty to identify the indemnity for its own wrongful acts. And that's the Charles code masonry case and the Cox cable case. And again, even if you buy that safe codes conduct somehow is intertwined with comedies alleged misconduct or wrongful acts under the Florida case law, even when there's joint liability in other words allegations that both the indemnitory and the indemnity acted together, and are both negligent and cause the damages, you still need that unequivocal expression of intent to identify a minute warning. Thank you. You still need that unequivocal expression in the indemnity provision. Identify the indemnity for its own wrongful acts, and that is absent here. Other points is endurance his own corporate representative testified that the only provision of the contract endurance contends was breached was the indemnity provision. And for that reason the implied covenant claim fails as a matter of law because under Florida law, you can't have a breach of an implied covenant without a breach of an express obligation or provision of the contract, because there is there can't be any, any breach of indemnity provision. There can't be any breach of any implied duties as well. And your honors if unless anyone else has any questions for me, I will preserve the rest of my time for a while. All right, thank you Valerie you can add one minute of rebuttal time for Mr Rosen. Okay, Mr Kaplan we're ready for you. Thank you, Your Honor, please the court Jim Kaplan on behalf of the athlete endurance. This morning's proceedings represent safe those attempts to sway the court to spare it from the consequences of its actions. Make no mistake. We didn't file the case to ask the court to have safe go indemnify us for comedies actions. That was never the case. This is an attempt by the by the appellant to spin, or share the theories of the case that will clear from the beginning that will manifest throughout, and which the district court had no difficulty understanding, not by the way the jury. So Mr Kaplan can ask you just this is judge news and just a quick question and I'll ask you basically the same question I asked Mr Rosen do I have your position basically right, if you say this isn't an effort to get safe code to indemnify comedies for the breach of fiduciary duty action is that basically right. That is exactly right. Okay, so, so then let me ask you this, if that's right. Number one, did the breach of fiduciary claim pre exist in time. Misconduct. Now, Okay, talk to me about that. What the record shows, and the facts logically undisputed is that in late June. There was a automobile accident that later proved fatal safe code new within days that policy limits are going to be insufficient, knew as well that it's insured had substantial personal assets, and therefore, no affidavit of financial responsibility would be provided by the insurance. At that point. Even before any claim was even any lawsuit was even filed against the insured safe go control the defense. It's hired Defense Council went out and recruited a bad faith lawyer to join the estates legal team to design and build the claim against not a finger was lifted to execute on that plan until safe go signed on until safe go agreed to wait post loss conditions and allow it's insured to get into bed and cooperate with. All right, so let me ask you just two other follow on questions and then I'll let my co panelists, ask their questions so. And I'll just ask them in succession and you can answer them as you see fit. So one of what relevance is it as I asked Mr Rosen that the jury rejected the broad claims, which I take to have substantial overlap with this allegation that safe code was involved in a scheme or a plan to cook up a bogus claim. And to what about the fact that, as Mr Rosen explained it anyway and you're an insurance lawyer so you can explain differently if you'd like, but that in effect what you're asking for is a first party indemnity claim, and not a third party indemnity claim and Florida law seems to say if you want to do first party indemnity you got to be pretty doggone clear about. I'll ask both questions in the order in which you asked the first is the relevance of the fraud count. This was not an ordinary fraud count this was account for fraud on the court. The jury's consideration of those issues was necessarily tied up by the instructions they were given instructions went on challenge. And so because the jury followed the instructions. They were able to resolve the fraud count against my client. But that does not impinge in any way, the correctness of their verdict, as to the two contract counts. The second question has to do with this first party third party. Frankly, the lingo can get a little confusing. To me, the issue is a safe post sometimes phrases it whether the contract, but comedies or indemnity against its own negligence. It does not. And that's not what we said. What we said was safe co wrote an extremely broad contract voluntarily including the words arising out of which on the floor was extremely broad and agreed to indemnify my client for any claims arising out of any actual or alleged negligent or intentional conduct on the company's part. That's exactly what happened. And so far as the case law is concerned, and I guess there's my difficulty and you can help me. This may be, you know, insurance law one on one and I'm sorry if I'm just not understanding but I guess what you're saying is that safe co has to indemnify comedies under the agreement for safe coast actions or misconduct toward comedies. And that I take to be a first party claim. Instead of a third party claim which would be that safe co has to indemnify comedies for its actions, vis a vis a third party that that leaves comedies on the hook. And I mean as I read Florida law, Florida law says I'm looking at a case called MBW management versus regalia and it says for indemnity to apply against first party claims, the indemnification provision must clearly indicate that it applies to the acts of the other party to the contract. The. The Florida law. Yeah, and first party third party, these labels, I think, can be confusing. The case law here, particularly the co case, which was discussed extensively. All makes clear that what's the terminative is the actual language of the indemnity. Here, there was no lawsuit filed against comedies, ever. And so, all you have is a self serving letter, written by safe coast Defense Council lane accusations. It would be beyond inequitable to hold that comedies, by extension endurance was bound up by that letter, simply because of counsel's choice of words, when the evidence that the jury sat for six days and listen to clearly establish what actually happened. But I don't know if this is what just knew some is trying to get at but is your claim under your understanding and framing of it. A first party indemnity claim against safe go. Michael, no matter how you style it, whether it's for safe goes on conduct or whatever. It's a first party indemnity claim right or am I missing something. It is a claim or safe goes negligent, or actually as the jury found intentional conduct in breaching its contract, refusing to indemnify participating in the scheme, basically pro comedies under the box. But that's a first, you're not seeking a breach of contract action you're it's an indemnity claim so it's a first party indemnity claim right because both because both safe going comedies are party to the indemnification agreement and safe goes failure to indemnify when requested to do so, reach the contract and safe goes conduct in creating the situation in the first place, and then failing to indemnify constituted a valid claim to breach the implied covenant, as the jury found, and as the court sustained and succinctly stated in denying the rule 50 be really Mr Kaplan, Your Honor. It's your claim against safe go a common law claim that is outside the contractual bargain between comedies and safe go. No, Your Honor, it is not. As I see it. Well they had a contractual relationship. But, but, as I see it you're alleging that safe go engaged in conduct, which would be cautious toward comedies. Is that right. Yes. Okay. So they so safe go and comedies had a relationship, an agent insurance company relationship and safe go in a given case, it happened that they came out of this relationship but it wasn't part of it. In a given case, they engage in cautious conduct with the estate, and so forth, and the insured. And, and in effect, injured comedies. Yeah. Okay. So it's got nothing to do with the indemnity agreement at all. They're liable under Florida law. Under Florida law for a tort. And the tort was contract comedies interests. It engaged this settlement, the negotiation. So, just a plain independent tort. That, that would be one way to look at it, the facts are exactly as your honor stated, that is the case. Well, right to the jury. Okay. That may well be what was tried to the jury. From an analytical point of view, it has nothing to do with the indemnity agreement, as I see it, as I see your claim. It's a plain old tort claim where the insurance company happened to have this relationship with comedies and engaged in conduct. That, that was that breached the fiduciary obligation or whatever a common law obligation to comedies. The conduct by safe go violated in number of laws. Can I ask you just a quick question so just so to make sure I'm following along what claims did you bring. I mean did you bring a common law indemnity claim, or some kind of broad claim or something. We did not bring a common law indemnity claim and that's why I asked. We did bring a lot on the court claim. But not a direct broad claim, because the representations will not make the claims that the jury resolved in the athlete's favor. Were a breach of contract, and a breach of the implied company, a breach of the implied covenant clearly goes on the floor and along I think the law of every jurisdiction to the reasonable expectations of the parties. Given the relationship comedies had every right to believe that it's contracting party would not throw it under the bus to save its own skin. And yet that's exactly what happened here. And for that reason, the jury was correctly instructed to have been no challenge. Now such a minute warning. Thank you, that they were completely entitled to find that if the reasonable expectations were frustrated defeated by safe those affirmative conduct, then a remedy would lie. And that's what they did. How are they saving their own skin that they paid up the policy limits. Right. What else could they have extra contractual damages. No, no, no, no, I'm with safe goes only exposure in this case was defend comment defend the insured and pay the policy limits which they did right away. Actually, they didn't do it for more than 30 days. Well, whatever the insured insured might have had a claim against safe go for bad faith and settling, but that's out. There's no bad faith and settling in this case. There's no bad faith and set in your shirt wouldn't have no claim in this case as I understand the facts against safe go for somehow or another, not having settled this claim, early enough, early up. Actually, they would and we argued that to the jury extensively under under opinions from this court under the Supreme Court opinion in Harvey failure to tend to the primary policy here when safe good news that the damages far exceeded it well then that they all got together. That claim as I understand it is not before us. The state bad faith claim on assignment of the insurance bad faith claim is not before us as I understand it. That's true, but the motivation is what's important. I understand we're back to our common law claim. I see that my time is up. You want to wrap up we'll give you 30 seconds to do so Mr Kaplan, I think you correctly understand the issue safe the state was on but you're creating this mess, and a properly instructed jury found that they all can support the damages. Nothing more, and nothing less. Thank you very much. Mr Rosen you've got your rebuttal time left. Thank you, Judge Jordan. Mr Kaplan was was asked a question about whether it was for first party indemnity. It can't possibly be a claim for first party indemnity because endurance paid a claim brought by a third party, this was the estate's claim. It was assigned by Mr Smith, both Mr Smith, and the state or non parties, the agreement. And this was a claim paid voluntarily by endurance the 1.57 million. After a demand letter with no litigation, be that as it may, it's a third party claim there's no way to turn this into a first party point. And the first party claim doesn't doesn't work either the indemnity provision doesn't work indemnity claim doesn't work whether it's first party or third party. I thought you wanted this to be a first party claim because your argument is that the agreement isn't clear enough to allow for that. Now you're suggesting it's a third party claim. And my again to go back to the first one of the first questions I asked you. I thought that a first party indemnity claim was one against a party to the indemnity agreement. Am I mistaken, well the claim is always going to be brought against a party to the indemnity agreement for failure to indemnify the question is whether it's a claim based. It's a liability claim because there's a third party that brought a lawsuit or a claim against the other party to the agreement. That's what we have here. My argument was there's no basis for first party indemnity because the plain language of the indemnity provision conditions indemnity upon notice of a third party claim and endurance in its briefs concedes that its claim is for third party indemnity. I know the argument today went a little bit differently. Either way, it doesn't work. The first party claim, you're right, I did argue that it doesn't work because of the plain language of the agreement, the third party indemnity claim doesn't work because the claim itself is one for competencies own negligence and we have a long line of cases that says you need a clear and unequivocal expression of an intent to indemnify for the indemnities on negligence we clearly don't have that here there's no dispute about that there's no even argument about that. There's one factual issue I want to correct, though opposing counsel said that the, the claim itself was written by safeco lawyer. That's just incorrect. The only embodiment of the claims in November 23 2016 letter by Richard bookwork he is the attorney for the estate. He's not safeco lawyer he wasn't hired by safeco he didn't represent see safeco lawyer was Mr smoke. And Mr smoke represented Mr Smith, not safe, but Mr smoke and nothing to do with this November 23 2016 letter that was the state's lawyer, and that and endurance admits that's the only embodiment for written expression of the claim that claim he says countries, you breach the duty of reasonable care, you breach to do a fiduciary duty, you didn't get the appropriate amount of coverage for Mr Smith he didn't communicate with him effectively, and you misrepresented the availability of additional insurance you incorrectly stated you have to increase your premiums and your underlying automobile automobile policy excuse me, and that was incorrect. All these allegations have nothing to do with safego they're based entirely on comedy's own wrongful acts, and under cable Cox Corporation versus both power under the Charles masonry case and under the long line of Florida cases decided their briefs. There's no language in this indemnity provision that would support a duty to indemnify for comedies own negligence. And again, you heard opposing counsel's presentation never wants to address the issue of the nature of the third party claim that endurance paid $1.57 million to settle, he never addresses that they want third party indemnity, and they want to ignore the substance and allegations of the third party claim that doesn't work. There's no claim for indemnity here and the court we asked the court reverse the judgment, finding safe reliable for breach of contract, I see that I'm out of time, your honors unless you have any additional questions. I would refer you to our briefs for any remaining arguments. All right, Mr Kaplan Mr Rosen Thank you both very very much. That's the end of our session today. So we stand in adjournment and we will get back up and going next more tomorrow morning at nine o'clock. Thank you very much. Thank you all.